UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JIMMIELEE SIMMONS BEVER,

Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

Case No. EDCV 10-02003-JEM

MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS

**PROCEEDINGS**

On December 28, 2010, Jimmielee Simmons Bever ("Plaintiff" or "Claimant" or "Bever") filed a complaint seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Social Security disability insurance benefits. The Commissioner filed an Answer to the Complaint on July 7, 2011. On September 8, 2011, the parties filed a Joint Stipulation ("JS").

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the undersigned Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be reversed and remanded for further proceedings in accordance with this Memorandum Opinion and Order and with law.

## BACKGROUND

Plaintiff Bever is a 62 year old female who filed an application for Social Security disability and disability insurance benefits on May 14, 2007, alleging disability beginning May 1, 2006. (AR 5.) Plaintiff has not engaged in substantial gainful activity since that date. (AR 7.)

Plaintiff's claim was denied initially on September 14, 2007, and on reconsideration on July 3, 2008. (AR 5.) Plaintiff filed a timely request for a hearing, which was held on August 18, 2009, in Palm Springs, California, before Administrative Law Judge ("ALJ") Joseph D. Schloss. (AR 5.) Plaintiff appeared and testified at the hearing. (AR 5.) Vocational expert ("VE") Troy L. Scott also appeared at the hearing. (AR 5.) Claimant was represented by counsel. (AR 5.)

The ALJ issued a decision denying benefits on November 24, 2009. (AR 5-12 .) The Appeals Council denied Plaintiff's request for review on October 28, 2010. (AR 38-42.)

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the issues Plaintiff raises as grounds for reversal and remand are as follows:

1. Whether the ALJ properly evaluated the opinions of Dr. Coyne.

2. Whether the ALJ properly evaluated the opinions of Dr. Alhadeff.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**THE SEQUENTIAL EVALUATION**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d) (1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d 1273, 1290 (9th Cir. 1996). Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141.

Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).

Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC")[1]. 20 C.F.R. § 416.920(e). RFC is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must account for all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000). The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

**THE ALJ DECISION**

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since May 1, 2006, the alleged onset date. (AR 7.)

At step two, the ALJ found that Plaintiff has the medically determinable severe impairments of chronic fatigue syndrome and affective mood disorder. (AR 7.)

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (AR 7.)

The ALJ found that Plaintiff has the RFC to perform less than a full range of medium work:

> The claimant could lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and walk six hours of an eight hour workday and sit six hours of an eight hour workday. The claimant must avoid extreme cold and heat, wetness, humidity and fumes and machines or heights as precautionary as defined in 20 C.F.R. 204.1567(c).

(AR 8.) In determining this RFC, the ALJ also made an adverse credibility finding, which is not challenged here. (AR 11.)

At step four, the ALJ found that Claimant is capable of performing her past relevant work as a pianist. (AR 12.)

Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (AR 12.)

## DISCUSSION

The ALJ decision must be reversed because the ALJ improperly rejected the opinion of the treating physician Dr. Coyne and failed to develop the record properly by not obtaining Dr. Coyne's chart and treatment notes. The ALJ also improperly rejected the opinion of Plaintiff's treating psychiatrist Dr. Alhadeff and failed to consider Plaintiff's multiple impairments and multiple medications in combination in evaluating the medical evidence and assessing Plaintiff's RFC.

### A. Relevant Federal Law

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those

who neither examine nor treat the claimant (non-examining, or consulting, physicians). See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record. Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas, 278 F.3d at 957. Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632. Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it. Id. However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record. Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

**B. The ALJ Improperly Rejected The Opinion Of Dr. Coyne**

The ALJ did not provide specific, legitimate reasons supported by substantial evidence for rejecting the opinion of treating physician Dr. Brian Coyne. In a one page letter dated November 8, 2007, Dr. Coyne stated as follows:

> I have been treating Jimmielee Bever for the past 3 years for chronic severe fatigue, presumed by to be caused by chronic active Epstein-Barr virus infection after exhaustive laboratory workup. Her symptoms manifest as retardation of movement and gait, slowed speech and delayed thought processing. I have not seen improvement in her symptoms over time. I do not believe she is or will be capable of returning to her usual employment as pianist/teacher.

(AR 271.)

The ALJ opinion barely mentions Dr. Coyne. The only reference in the opinion to Dr. Coyne is, "The undersigned has considered the treating physician's Dr. Coyne and Dr. Alhadeff opinion that the Claimant's impairments will last more than 12 months . . . . The undersigned finds Dr. Alhadeff's past period of adjudication is not credible." (AR 10.) The ALJ does not discuss Dr. Coyne's opinion on Plaintiff's disability or even his opinion that Plaintiff's impairment has lasted or will last 12 months. He only discussed the opinion of Dr. Alhadeff, Plaintiff's treating psychiatrist, who was not even addressing Plaintiff's chronic fatigue syndrome ("CFS"). Thus, the ALJ's analysis cannot be taken as also applicable to Dr. Coyne. The reference to Dr. Coyne is also inconsistent with the ALJ's own finding that Plaintiff's CFS was a severe impairment, which necessarily meant Plaintiff's condition was of 12 month duration. The ALJ simply does not address Dr. Coyne's substantive opinion, much less offer specific, legitimate reasons supported by substantial evidence for rejecting it.

The Commissioner's attempts to excuse this error are unavailing. The Commissioner presents an argument not found in the ALJ opinion that the ALJ "properly discounted the single-page unsupported opinion" that is "not supported by objective medical

evidence." (AR 6-7.) This argument fails for two reasons. First, the Court must evaluate the ALJ's decision only on the grounds articulated therein. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (Court cannot base its ruling on considerations not addressed in the ALJ decision). The ALJ did not offer any reasons for rejecting Dr. Coyne's opinion and the Commissioner may not supply new reasons to make up for what the ALJ failed to do.

Second, the Commissioner's assertion is false in any event. Not only did Dr. Coyne make reference to "exhaustive laboratory workup" (AR 271), the administrative record contains numerous examples of laboratory test results ordered by Dr. Coyne that provide evidence of CFS and Epstein-Barr, diagnoses that are nowhere disputed by the ALJ or any physicians of record. (AR 203-04, 349, 350, 351.) The inadequacy of the ALJ opinion in regard to Dr. Coyne is particularly highlighted by the failure to mention SSR 99-2p (April 30, 1999) on Evaluating Cases Involving Chronic Fatigue Syndrome (CFS). Moreover, neither of the parties mentions SSR 99-2p in their Joint Stipulation. SSR 99-2p sets forth the definitions, symptoms and laboratory findings required by the Center for Disease Control (CDC) to establish CFS.[2] SSR 99-2p specifically mentions laboratory findings of elevated antibodies characteristic of Epstein-Barr as a method of establishing CFS as a medically determinable impairment. The blood testing ordered by Dr. Coyne that revealed evidence of Epstein-Barr is exactly the sort of lab testing recommended by SSR 99-2p. Dr. Coyne's opinion cannot be rejected on the ground that it is unsupported by objective medical evidence.

The ALJ, moreover, failed to develop the record fully. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001.) The ALJ has a basic duty to inform himself about facts relevant

---

[2] Ironically, in a June 30, 2008 analysis, State agency reviewer Dr. K. Mauro made reference to the CDC's criteria, noting that Plaintiff satisfied three of the four symptoms required to establish CFS: self-reported impairment of concentration, muscle pain and unrefreshing sleep. (AR 375-76.) Dr. Hirschberg provided a fourth (headaches). (AR 491.) The ALJ accepts that Plaintiff has the severe medical impairment of CFS.

Dr. Mauro, moreover, did not mention mental issues often related to CFS that can help establish it, which are discussed in SSR 99-2p. See pp. 12-13 infra.

to his decision. Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring). Ambiguous evidence or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence triggers the ALJ's duty to conduct an appropriate inquiry. Id. Smolen, 80 F.3d at 1288. Here, the evidence was very much in conflict as to Plaintiff's RFC and the severity of her CFS. In addition to Dr. Coyne's laboratory findings, Dr. Betson also did extensive laboratory testing with positive results for CFS and Epstein-Barr (AR 201-04, 213-14, 316-17, 320-21) and concluded that because of extreme fatigue Plaintiff was "in need of rest, vitamins and stress reduction for 6 months." (AR 442.) Additionally, Lisa Marie Blaskie, R.N., provided important lay witness evidence of Plaintiff's fatigue and inability to function well enough to work. (AR 148-78, 367-68.) The ALJ's summaries of Dr. Betson's and Ms. Blaskie's statements are not thorough or complete. The ALJ's assessment of the evidence seems more concerned with Plaintiff's ability to perform a specific motor skill at one point in time than in assessing her fatigue. Against all of this evidence suggesting disability are the two examinations of Dr. Siciarz and shards of statements from the inconclusive assessment of Dr. Hirschberg. (AR 9, 491, 92.) Before rejecting the treating physician opinion of Dr. Coyne on the severity of Plaintiff's CFS, the ALJ should have obtained the three years of chart notes and progress notes of Dr. Coyne not contained in the record. Dr. Coyne is a treating physician and Dr. Siciarz a non-treating examining physician. Before relying on the latter, the ALJ should have obtained the medical records necessary to make an informed decision. The ALJ also should have obtained the records of Dr. Cone, another treating physician.

The Commissioner also argues that Dr. Coyne's statement that Plaintiff is not capable of returning to her prior work is a legal finding reserved to the Commissioner. (AR 7.) To be sure, the ALJ is not bound by a treating physician's disputed opinion on the ultimate issue of disability, but the ALJ nonetheless cannot reject that opinion without providing specific, legitimate reasons supported by substantial evidence. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). Here, the ALJ failed to do so.

The Commissioner next argues that the ALJ provided a thorough explanation of the medical evidence and relied on the opinions of Dr. Kristoff Siciarz, who opined that Plaintiff could perform medium work with limitations. (AR 236-39, 283-87.) This argument fails for several reasons. First, the ALJ opinion does not provide an adequate review of the medical evidence because the ALJ did not examine the evidence according to the framework set forth in SSR 99-2p. Second, Dr. Siciarz' opinion does not do so either. Third, even treating Dr. Siciarz' opinion as substantial evidence, the ALJ nonetheless was required to provide specific, legitimate reasons supported by substantial evidence for rejecting the contradicted opinion of a treating physician. Lester, 81 F.3d at 830-31. The ALJ failed to do so. At best, the ALJ's opinion simply prefers the RFC of Dr. Siciarz, who examined Plaintiff twice, over that of Dr. Coyne, who treated Plaintiff for three years, without ever explaining why. Fourth, Dr. Coyne's opinion considered both Plaintiff's CFS and related neurocognitive mental issues as SSR 99-2p recommends. See pp. 12-13 infra. Dr. Siciarz' opinion on Plaintiff's CFS does not consider or even mention Plaintiff's related neurocognitive mental issues and depression, and thus failed to consider Plaintiff's multiple impairments in combination when assessing Plaintiff's RFC.

The ALJ improperly rejected Dr. Coyne's opinion without providing specific, legitimate reasons supported by substantial evidence, and by failing to develop the record fully.

**C. The ALJ Improperly Rejected The Opinion Of Dr. Alhadeff**

The ALJ also improperly rejected the opinion of Plaintiff's treating psychiatrist Dr. Alhadeff and failed to consider Plaintiff's multiple impairments in combination when assessing her RFC.

Dr. Alhadeff saw Plaintiff nearly 60 times encompassing 55 hours. (AR 195, 495.) He diagnosed Plaintiff with conversion disorder, major depressive disorder, and personality disorder. He opined that Plaintiff suffers from marked limitations in activities of daily living, social functioning and maintaining concentration, persistence and pace, and would not be able to tolerate the stress of work. (AR 408, 493-95.) Dr. Alhadeff based his findings in part

on the MMPI personality test that he administered. (AR 494.) His treatment notes supporting his analysis are extensive. (AR 443-89.)

The ALJ opinion does not acknowledge Dr. Alhadeff's opinions or present them accurately and completely. The ALJ opinion primarily took issue with Dr. Alhadeff's opinion that Claimant's impairments would last more than 12 months. (AR 10.) Plaintiff pointed out that this articulated reason was simply incorrect. Dr. Alhadeff's treatment records indicate that he previously had diagnosed a somatoform disorder and the conversion disorder diagnosis is a form of somatoform disorder and but a clarification of Plaintiff's condition. (AR 443-489.) The Commissioner did not respond to or disagree with Plaintiff's contention.

The ALJ opinion also states that Dr. Alhadeff's records indicate that Plaintiff was no longer depressed. (AR 10.) Plaintiff again points out that the ALJ's characterization of Dr. Alhadeff's opinion is unsupported by treatment records and directly contrary to the opinions stated in Dr. Alhadeff's thoroughgoing August 11, 2009, letter (AR 493-95), which the ALJ opinion never acknowledges or discusses. The Commissioner did not respond to or disagree with Plaintiff's contention.

The ALJ opinion further states that Dr. Alhadeff's treatment records reflect conservative care and no significant abnormality. (AR 10.) Again, Plaintiff notes the ALJ did not cite to substantial evidence in the record and the ALJ's statement is contrary to Dr. Alhadeff's opinions in his August 11, 2009, letter. The Commissioner did not respond to or disagree with Plaintiff's contention.

The ALJ opinion, then, did not provide specific, legitimate reasons supported by substantial evidence for rejecting Dr. Alhadeff's conclusions. The Commissioner asserts that the ALJ implicitly rejected Dr. Alhadeff's opinions by relying on the opinions of psychologist Robin Campbell, Ph.D., and psychiatrist Dr. Kent Jordan, who found no disabling mental impairments and thought Plaintiff not entirely credible. (AR 10, 241-45, 360-66.) The ALJ, however, simply described these opinions without setting forth any reasons why he preferred the opinions of two consulting examiners over those of Plaintiff's treating psychiatrist whose

opinions are based on extensive clinical treatment and laboratory testing. Nor did the ALJ acknowledge or discuss Dr. Alhadeff's sharp rejection of the credibility assessments of Dr. Campbell and Dr. Jordan. The failure to present specific, legitimate reasons for rejecting Dr. Alhadeff's substantive opinions was error. Lester, 81 F.3d at 830-31. It is an error that cannot be fixed by the Commissioner's own attempt to use the opinions of Dr. Campbell and Dr. Jordan to challenge Dr. Alhadeff's assessment. Connett, 340 F.3d at 874 (court cannot base its ruling on considerations not addressed in the ALJ decision).

For the same reason, the Commissioner's argument that the ALJ properly rejected Dr. Alhadeff's opinion to the extent it was based on Plaintiff's own assertions must fail. Plainly, the ALJ opinion did not reject Dr. Alhadeff's opinion on this ground, and it cannot be considered. Id. There also is no evidence that Dr. Alhadeff assumed all of Plaintiff's subjective complaints to be true; in fact, he relied on MMPI psychological test results to support his opinions. (AR 494.) There also is no discussion of Dr. Alhadeff's cogent explanation of how stress results in Plaintiff's neurocognitive difficulties, or of his rejection of the credibility judgments of Dr. Campbell and Dr. Jordan.

The ALJ's failure to address Dr. Alhadeff's substantive opinions is especially problematic because SSR 99-2p makes clear that mental findings can help to establish CFS. Mental issues associated with CFS can be neurocognitive (problems with memory, information processing, concentration, speech, word-finding) or a mental disorder such as depression. SSR 9-2p *3-*4. There is considerable evidence in the administrative record of CFS-related mental issues. Dr. Coyne mentioned "slowed speech and delayed thought processing." (AR 271.) State agency reviewer K. Mauro found "evidence of deficits in neurocognitive functioning." (AR 375.) Nurse Blaskie found deficits in information processing, concentration, and speech/word finding. (AR 148.) Psychiatrists Dr. Alhadeff, Dr. Campbell, and Dr. Jordan diagnosed depressive disorder. (AR 493-95, 244, 364-65.)

As a result of the failure by the ALJ to follow the framework of SSR 99-2p, the ALJ opinion makes the error of not considering Plaintiff's multiple impairments and multiple

medications in combination with each other in assessing the medical evidence and Plaintiff's RFC. A claimant's illness "must be considered in combination and must not be fragmentized in evaluating their effects." Beecher v. Heckler, 756 F.2d 693, 694-95 (9th Cir. 1985). The ALJ must consider the combined effect of all of a claimant's impairments on his or her ability to function "without regard to whether each alone was sufficiently severe." Smolen, 80 F.3d at 1290. The ALJ opinion plainly treats Plaintiff's CFS and mood disorder impairments separately, never acknowledges the relationship of CFS and the mental issues Plaintiff was reporting and does not distinguish between neurocognitive problems and depression. Dr. Coyne's opinion is the only one to consider both CFS and neurocognitive impairments in assessing Plaintiff's RFC. Dr. Campbell's RFC was "[b]ased on purely psychological symptoms" (AR 245) and Dr. Jordan's opinion "[f]rom a psychiatric standpoint" (AR 366) never considered that Plaintiff's CFS and mental issues might be related. There also is no discussion in the ALJ opinion of medications even though the administrative record indicates Plaintiff was taking medications for both CFS and depression, medications that possibly may be the source of some of her mental symptoms.

**D. Disposition**

On remand, the ALJ should obtain the chart and treatment notes of Dr. Coyne and Dr. Cone. The ALJ is directed to analyze the record evidence in accordance with the framework set forth in SSR 99-2p. The ALJ also should consider Plaintiff's CFS and mental impairments and multiple medications, in combination, in assessing Plaintiff's RFC.

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is REVERSED and REMANDED for further proceedings in accordance with this Memorandum Opinion and Order and with law.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 27, 2011

*/s/ John E. McDermott*
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE